## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Kimm R. W.,                                              No. 23-cv-2497 (JMB/DLM)

    Plaintiff,

v.                                                       **REPORT AND**
                                                         **RECOMMENDATION**
Martin J. O'Malley,
Commissioner of Social Security
Administration,

    Defendant.

Pursuant to 42 U.S.C. § 405(g), Plaintiff Kimm R. W. seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for benefits. This matter is before the Court on the parties' briefs seeking judgment on the administrative record. (Docs. 11 (Plaintiff's brief), 13–14 (Commissioner's motion and brief), 16–16-1 (Plaintiff's reply brief and exhibit).) The case has been referred to the undersigned magistrate judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1. For the reasons below, the Court recommends that Plaintiff's motion be granted in part, the Commissioner's motion be granted in part, and the matter be remanded for further proceedings consistent with the findings below.

## BACKGROUND

On August 12, 2021, Plaintiff applied for Disability Insurance Benefits ("DIB"), and on August 16, 2021, she applied for Supplemental Security Income ("SSI"), alleging in each application that she had been disabled since January 1, 2007.[1] (Tr.[2] at 221–25 (DIB), 228–30 (SIS).) The Social Security Administration denied her claim initially (Tr. at 128–29), and upon reconsideration (Tr. at 140–41). Plaintiff then timely requested a hearing before an Administrative Law Judge ("ALJ"), and the ALJ held a hearing on the matter on July 29, 2022. (Tr. at 147–48 (request for hearing), 33–76 (hearing transcript)). Counsel represented Plaintiff at the hearing, and Plaintiff also testified on her own behalf. (Tr. at 33–35, 42–69.) A vocational expert also testified, concluding that there were jobs in the national economy that a person with physical and mental limitations similar to Plaintiff's could perform. (Tr. at 69–73.)

On October 28, 2022, the Commissioner sent his notice of an unfavorable decision to Plaintiff for both applications. (Tr. at 13–27.) The ALJ recognized that Plaintiff suffered

---

[1] The ALJ's decision appears to have a clerical error, misidentifying Plaintiff's alleged disability onset date as February 1, 2007, rather than January 1, 2007. (*Compare* Tr. at 16, 17 *with* Tr. at 221, 228.) Additionally, during the hearing, Plaintiff's counsel repeated this February 1, 2007 error, then orally amended the alleged onset date of Plaintiff's disability to August 16, 2021. (Tr. at 39–40.) To be entitled to DIB, a plaintiff must prove they were disabled before their insurance expired. *See Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006). The ALJ found Plaintiff remained insured through December 31, 2009, well before the alleged onset date of her disability on August 16, 2021. (Tr. at 17.) Therefore, the ALJ properly found that Plaintiff is not entitled to DIB, Plaintiff does not challenge this finding, and this judicial review only pertains to Plaintiff's SSI application's denial.

[2] The Commissioner filed the consecutively paginated transcript of the administrative record on October 13, 2023. (Docs. 9–9-1.) For ease of reference, citations to the transcript will treat the record as a single document and will identify the page number listed on the lower right corner of the cited document rather than the docket page number.

from several severe impairments, including "osteoarthritis of the right knee, Baker's cyst of the right knee, anemia, hypertension, chronic obstructive pulmonary disease (COPD), gastroesophageal reflux disease (GERD), depression, anxiety, personality disorder, neurocognitive disorder, and posttraumatic stress disorder (PTSD)." (Tr. at 19.)

Despite Plaintiff's mental and physical impairments, the ALJ found that she did not qualify for benefits. (Tr. at 13.) First, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work as defined by 20 C.F.R. § 416.967(b), provided the job included some limitations to account for Plaintiff's additional impairments. (Tr. at 22.) Relevant to this review, the RFC included a limitation to "brief superficial interactions with coworkers and the general public." (*Id.*)

The ALJ also considered Plaintiff's age. She was 54 years old at the time of the ALJ's decision, putting her into a category with individuals between 50 and 54 who are "closely approaching advanced age" under 20 C.F.R. § 416.963. (Tr. at 25.) But Plaintiff was within six months of reaching a higher category for persons of "advanced age" who are 55 and older, resulting in a borderline age situation in which the SSA "will consider whether to use the older age category after evaluating the overall impact of all the factors of [a claimant's] case." 20 C.F.R. § 416.963(b). Despite her borderline age, the ALJ found the use of a higher age category unwarranted because Plaintiff had not "shown compelling additional factors that would compromise her ability to adjust to other work." (Tr. at 25.)

Next, the ALJ credited the testimony of the vocational expert that although Plaintiff could no longer perform her past relevant work, at least three representative occupations listed in the Dictionary of Occupational Titles ("DOT") could be performed by a person

with similar limitations to Plaintiff: clothing presser (DOT No. 636.684-018); office helper (DOT No. 239.567-010); and sewing machine operator (DOT No. 786.682-026). (Tr. at 26, 70.) Because there were sufficient jobs available in the national economy for someone with Plaintiff's limitations, the ALJ found her not disabled under the evaluative process set forth in 20 C.F.R. § 416.920(g). (Tr. at 27.) Plaintiff appealed the ALJ's decision, but the Appeals Council denied her request for further review, making the ALJ's decision the final decision of the Commissioner. (Tr. at 3–5.)

Plaintiff does not challenge any of the ALJ's determinations on her physical impairments or limitations. Rather, Plaintiff asserts the ALJ legally erred twice in his decision. First, she argues that the ALJ legally erred by applying an improper age analysis because he miscalculated her age as about six months from the next highest age category when she was closer to four months away, and because he applied an improper burden of proof. Plaintiff also attacks the ALJ's decision to place her in the "closely approaching advanced age" category as not supported by substantial evidence. And second, Plaintiff contends that the ALJ legally erred by failing to explain why he found the state agency psychologists' opinions persuasive as to Plaintiff's moderate social functioning but then did not adopt their recommended social limitations related to supervisors in fashioning Plaintiff's RFC. Both of the state agency psychological experts, Marci Mylan, Ph.D., and Erika Gilyot-Montgomery, Psy.D., opined that Plaintiff had moderate limitations in her ability to appropriately interact. (Tr. at 86, 109–10.) Dr. Mylan found Plaintiff could only tolerate "brief, infrequent, and superficial contact" with coworkers and supervisors, and could have "[n]o responsible public contact." (Tr. at 86.) Dr. Gilyot-Montgomery found

Plaintiff could have "brief superficial interaction with others in a work setting," and could "interact briefly and superficially with public and others in a work setting." (Tr. at 109–10.) The ALJ found that "[w]hile these findings are not stated in vocationally relevant terms, they are generally persuasive because they are supported by explanation and consistent with the evidence." (Tr. at 24.) However, the ALJ then determined Plaintiff could "tolerate brief superficial interactions with coworkers and the general public" but was silent as to her ability to interact with supervisors. (Tr. at 22.) According to Plaintiff, the ALJ did not explain this omission when crafting Plaintiff's RFC.

## ANALYSIS

This Court reviews an ALJ's denial-of-benefits decision to determine whether it is supported by substantial evidence in the record as a whole, and whether the decision is infected by legal error. 42 U.S.C. § 405(g); *Austin v. Kijakazi*, 52 F.4th 723, 728 (8th Cir. 2022). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotations omitted); *see also Nash v. Comm'r, Soc. Sec. Admin*, 907 F.3d 1086, 1089 (8th Cir. 2018) (characterizing "substantial evidence" as "less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's conclusions"). Courts reviewing ALJ decisions must look to the entire administrative record to ascertain whether it contains sufficient evidence to support the ALJ's conclusion. *Grindley v. Kijakazi*, 9 F.4th 622, 627 (8th Cir. 2021). When substantial evidence supports the ALJ's decision, the Court will not reverse, even if substantial evidence also supports a contrary outcome. *Nash*, 907 F.3d at 1089. But if an ALJ fails to

explain their evaluation of the persuasiveness of the record's prior administrative medical findings, that is a legal error subject to de novo review. *Joel M. B. v. Kijakazi*, No. 21-cv-1660 (PAM/ECW), 2022 WL 1785224, at *2 (D. Minn. June 1, 2022) (citing *Collins v. Astrue*, 648 F.3d 869, 871 (8th Cir. 2011)); *Michael B. v. Kijakazi*, No. 21-cv-1043 (NEB/LIB), 2022 WL 4463901, at *1 (D. Minn. Sept. 26, 2022).

Plaintiff does not contest that the ALJ followed the five-step sequential process laid out in 20 C.F.R. § 416.920(a)(4)[3] for evaluating SSI claims. Rather, Plaintiff asserts that in determining her age category and RFC, the ALJ misstated the factual record and applied incorrect standards and analyses, resulting in both legal error and a conclusion that is not substantially supported by the record. The Court will take each issue in turn.

## I.    THE ALJ'S USE OF PLAINTIFF'S CHRONOLOGICAL AGE IS NEITHER LEGALLY ERRONEOUS NOR WITHOUT SUBSTANTIAL SUPPORT IN THE RECORD.

The Court first addresses Plaintiff's claim that the ALJ improperly evaluated her borderline age. Age is a vocational factor that ALJs consider when evaluating whether a person is disabled for benefits purposes. *See* 20 C.F.R. § 416.963. Here, to determine

---

[3] Step one of this process involves determining whether a claimant is engaged in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(i). If not, the ALJ must next decide (in step two) whether the claimant's impairments are severe, and of a duration of least 12 continuous months. *Id.* § 416.920(a)(4)(ii). At step three, the ALJ determines whether the claimant's impairments are severe enough to equal a listed impairment under Appendix 1 to Subpart P of Part 404. *Id.* § 416.920(a)(4)(iii). If so, the claimant is considered disabled without further inquiry. If not, the ALJ must determine the claimant's RFC, and decide (at step four) whether the claimant can still do their past work given their limitations. *Id.* § 416.920(a)(4)(iv). Finally, if the ALJ concludes a claimant cannot perform their prior work, step five requires the ALJ to determine whether they can do other work considering their RFC, age, education, and work experience. *Id.* § 416.920(a)(4)(v).

whether Plaintiff could still perform any work, the ALJ had to locate Plaintiff's abilities within an appropriate age category. On the date of the ALJ's decision, Plaintiff was 54 years, seven months, and four days old, meaning that she was four months and 24 days from being 55 years old. The ALJ stated that Plaintiff was "about six months" from the next higher age category. (Tr. at 25.) Plaintiff argues that this inaccurate addition of an approximate extra month caused the ALJ to use more stringent requirements in assessing her age's impact on her ability to perform the occupations that the vocational expert identified. She also contends that the ALJ incorrectly applied the "sliding scale" analysis used to evaluate borderline age cases, inexplicably finding that Plaintiff's lack of past relevant work, her limited education, and her extensive physical and mental limitations supported moving her to the higher age category—but then failed to do so. (Tr. at 25.) She claims this conclusion is not substantially supported by the record evidence, nor is there an adequate explanation of how these factors justify using her chronological age category. Finally, Plaintiff argues that the ALJ applied a legal standard that does not exist, refusing to use the higher age category because Plaintiff "has not shown compelling additional factors that would compromise her ability to adjust to other work." (*Id.*)

The Commissioner disagrees, arguing that the SSA has great discretion under the regulations in deciding whether to use a different age category than a plaintiff's chronological age. He argues that the ALJ properly identified the borderline age issue and explained his reasons for declining to apply a higher category. Specifically, the Commissioner notes that the ALJ did not mechanically evaluate Plaintiff's borderline age and its impact, instead considering such factors as her past relevant work, limited

education, and other functional limitations. Even so, the ALJ still concluded that the record as a whole did not support using a higher age category. The Commissioner further contends that internal agency guidance about what factors an ALJ should consider in reaching this discretionary decision are non-binding and cannot be used to find any legal error on the ALJ's part, and that, regardless, the ALJ weighed and discussed these factors in reaching his conclusion.

The Court finds no legal error in the ALJ's conclusions about Plaintiff's borderline age. There is no dispute that Plaintiff's age presented a borderline age question for the SSA's determination. For such situations, the relevant regulation—20 C.F.R. § 416.963(b)—requires that the ALJ "consider whether to use the older age category after evaluating the overall impact of all the factors of [a claimant's] case." Additionally, while nonbinding on the SSA and this Court, the Hearings, Appeals, and Litigation Law Manual of the SSA ("HALLEX") provides ALJs with additional guidance on analyzing borderline age. *See Dols v. Saul*, 931 F.3d 741, 749 n.4 (8th Cir. 2019) (quoting *Schweiker v. Hansen*, 450 U.S. 785, 789 (1981) (per curiam) (finding that HALLEX "has no legal force" and "does not bind the SSA")). According to HALLEX, ALJs must use a "sliding scale" approach to determine which age category to use. *See* SSA, HALLEX I-2-2-42, https://perma.cc/93GX-XBWT (last updated Mar. 25, 2016). HALLEX further explains that:

> To support the use of the higher age category, the claimant must show that the factor(s) have a progressively more adverse impact on his or her ability to adjust to other work as the period between the claimant's actual age and attainment of the next higher age category lengthens.

> . . .
>
> If there is no support for the use of the higher age category (e.g., the factors present do not negatively affect or have a more adverse impact on the case), ALJs will use the claimant's chronological age, even when the period under consideration is only a few days.
>
> . . .
>
> The ALJ will explain in the decision that he or she considered the borderline age situation, state whether he or she applied the higher age category or the chronological age, and note the specific factor(s) he or she considered.

*Id.*

Here, the ALJ followed the regulations and HALLEX guidance. The ALJ discussed his analysis of Plaintiff's borderline age, concluding that Plaintiff was still appropriately considered in the category of her chronological age even though she was within months of attaining the next higher age category. (Tr. at 25.) Plaintiff argues that the ALJ somehow used inappropriately stringent standards because the ALJ stated she was about six months from the next age category when she was closer to five months from that category. Yet Plaintiff does not point to what that improper stringency entailed or how it altered the analysis. The Court cannot conclude that this rounding up of about a month's difference in Plaintiff's age amounts to a legal error when the ALJ followed the appropriate regulations and SSA guidance in his analysis.

The ALJ discussed factors that he considered, including Plaintiff's past relevant work, education, RFC, and other factors that might counsel towards using the higher age category. (Tr. at 25–26.) Specifically, the ALJ noted that Plaintiff had no past relevant work, that her education level was irrelevant because any level would result in a finding of

disability at the next age category, and that her RFC limitations were at an unskilled level, and he concluded these factors provided some support for using the relevant higher age category. (*Id.*) But he went on to find that "[c]onsidering all of these factors *and the lack of any other factors supporting the use of the higher age category*, the record does not support using the higher age category." (*Id.* (emphasis added).) In other words, the ALJ pointed out the lack of other, affirmative factors that counseled him towards a finding that Plaintiff's circumstances warranted using the higher age category.

On this record, the Court cannot find that the ALJ erred in following the relevant regulation and SSA guidance when he concluded that while some factors might support using a higher age category, on balance, Plaintiff's case lacked enough to advance Plaintiff into the next age category. In other words, the ALJ found that Plaintiff's record did not contain such compelling evidence that a category jump made sense. This does not amount to the application of a novel, improper legal standard. Rather, it is an explanation of why the ALJ was not persuaded that he should advance Plaintiff into the next age category. Plaintiff claims this leaves us guessing as to why the ALJ used her chronological age, but the Court finds that the ALJ sufficiently explained the factors he relied on, including the lack of affirmative, persuasive factors that tipped the scale in his analysis towards a higher age category.

Additionally, the ALJ's conclusion is supported by substantial evidence in the record on the factors he evaluated, including Plaintiff's education, work experience, and RFC limitations. Plaintiff argues that these factors all supported moving her age category up, but the record is not so clear. Plaintiff had completed some education to about the tenth

or eleventh grade, although she claims she learned little after about fifth grade. (*See, e.g.*, Tr. at 42, 43, 254, 436, 690, 843.) She also had no recent work experience at the time of filing for benefits, but did have some past employment, including working in factories. (*See, e.g.*, Tr. at 237, 265, 371, 624, 635, 662, 690.) And Plaintiff raised no challenge to the ALJ's conclusion that she could perform light work with some limitations in her RFC (*see* Tr. at 22, 23, 26), apart from her challenge to the social interaction limitations related to supervisors that the Court will address below.

Finally, Plaintiff points to no additional factors that the ALJ should have used to support a higher age category. Even if she had, the Court would be hard pressed to find that the ALJ's discretionary decision is so without evidentiary support that it merits reversal, even if Plaintiff pointed to contradictory evidence. *See Biestek*, 139 S. Ct. at 1154 ("Substantial evidence, this Court has said, is 'more than a mere scintilla.'") (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Nash*, 907 F.3d at 1089 ("If substantial evidence supports the Commissioner's conclusions, this court does not reverse even if it would reach a different conclusion, or merely because substantial evidence also supports the contrary outcome.") (quoting *Travis v. Astrue*, 477 F.3d 1037, 1040 (8th Cir. 2007)). Therefore, the Court recommends finding for the Commissioner concerning Plaintiff's challenge to the ALJ's borderline age conclusion.

## II. THE ALJ ERRED BY FAILING TO PROVIDE THE EXPLANATION REQUIRED BY 20 C.F.R. § 416.920c CONCERNING LIMITATIONS TO PLAINTIFF'S ABILITY TO INTERACT WITH SUPERVISORS.

The Court next considers Plaintiff's challenge to the ALJ's explanation of how he incorporated the record's medical expert findings into her RFC. Specifically, Plaintiff

argues that the ALJ legally erred when he inexplicably omitted a limitation to only brief, superficial, and infrequent interactions with supervisors recommended by two state psychological experts from her RFC. Plaintiff points out that Drs. Mylan and Gilyot-Montgomery found she had moderate limitations in her ability to appropriately interact in the workplace, including with supervisors. (Tr. at 86, 109–10.) The ALJ concluded that the findings were persuasive because they were consistent with and supported by the record evidence, although he observed that they were "not stated in vocationally relevant terms." (Tr. at 24.) Yet when the ALJ crafted Plaintiff's RFC, he was silent about her ability to interact with supervisors. This is particularly noteworthy, because the ALJ *did* impose a limitation of only brief and superficial interactions with coworkers. (Tr. at 22.) Plaintiff argues that if the ALJ intended to omit a recommended limitation to her ability to interact with supervisors, the ALJ should have explained why he found it inconsistent with or unsupported by the record by regulation. Failure to do so, according to Plaintiff, is a legal error.

For his part, the Commissioner responds that the ALJ properly considered all of the record evidence, including the findings of Drs. Mylan and Gilyot-Montgomery, and the resulting RFC's social interaction limitations are best read as including supervisors within the category of coworkers. As support for this interpretation, Defendant cites the definition of "colleague" or "coworker" as inclusive of all "ranks" within a company on Indeed.com, a website for job postings and applications. (Doc. 14 at 9 (citation omitted).) The Commissioner also points to Dr. Gilyot-Montgomery's finding that Plaintiff can briefly and superficially interact "with *others* in a work setting," arguing that this expert's findings

collapsed all workplace ranks into "others." (*Id.* at 9–10 (quoting Tr. at 17).) In short, the Commissioner contends that the Court should not reverse an opinion because of semantics that can be perceived as an inconsistency. The Commissioner also argues that, even if the ALJ chose not to include any RFC limitations related to Plaintiff's ability to interact with supervisors, substantial evidence in the record would support that determination. He points to record evidence that Plaintiff responded well to mood-stabilizing medications, could perform tasks of daily life, had normal attention and concentration, could follow simple instructions, could ask simple questions, and generally got along well enough with others. (Tr. at 24–25, 97–98, 121–22.) Finally, the Commissioner directs the Court to the ALJ's discussion with the vocational expert at the hearing, noting that the vocational expert testified that so long as an employee with limitations identical to Plaintiff's did their work satisfactorily, interactions with a supervisor would only be brief and superficial. (Tr. at 73.)

This case presents a close question about whether the ALJ legally erred in omitting the category of social interaction limitations related to supervisors. The Commissioner makes many well-reasoned post-hoc arguments about how the Court could interpret the silent parts of the ALJ's decision on social interaction limitations with supervisors. The problem is that the Court cannot use such post-hoc arguments to fill in the explanation— required by regulation—that the ALJ failed to give. *Accord Stacey S. v. Saul*, No. 18-cv-3358 (ADM/TNL), 2020 WL 2441430, at *15 (D. Minn. Jan. 30, 2020), *R. & R. adopted*, 2020 WL 1271163 (D. Minn. Mar. 17, 2020) ("It is not the role of this Court to speculate on the reasons that might have supported the ALJ's decision or supply a reasoned basis for that decision that the ALJ never gave."); *Ronald V. v. Kijakazi*, No. 22-cv-2140 (TNL),

2023 WL 6318276, at *6 (D. Minn. Sept. 28, 2023) ("This Court's review of the Commissioner's decision, through the ALJ, is limited to the grounds identified in the ALJ's decision."); *Kelly L. R. v. O'Malley*, No. 22-cv-2952 (JFD), 2024 WL 1095887, at *5 (D. Minn. Mar. 1, 2024) ("The Court cannot accept these post-hoc rationalizations and identifications of supporting evidence."); *Mai V. v. O'Malley*, No. 22-cv-2086 (JFD), 2024 WL 1332257, at *10 (D. Minn. Mar. 28, 2024) ("The Commissioner offers several post-hoc rationalizations for the ALJ's consideration of the supportability and consistency factors and points to evidence from Dr. Hammes and others that the ALJ did not include in her consideration of these factors. The Court cannot accept these post-hoc arguments.").

Instead, the Court must review the ALJ's own explanation to determine whether it meets the regulatory requirements. An ALJ must consider several factors in evaluating prior administrative medical findings, but prioritize the factors of supportability and consistency as the most important. 20 C.F.R. § 416.920c(a), (b)(2). While "supportability" and "consistency" are terms of art, the regulations indicate that, as used in this context, the words mirror their everyday meaning: supportability means that a prior administrative medical finding will be considered more persuasive the more it is supported by objective medical evidence; consistency means that a prior administrative medical finding will be more persuasive if it is consistent with the other medical and nonmedical sources relevant to Plaintiff's claim. 20 C.F.R. § 416.920c(c)(1), (2). Provided that the ALJ's reasoning is sound and supported, they may "accept some, but not all, of a medical opinion." *Austin*, 52 F.4th at 729. But at the very least, regulations require that the ALJ explain how they considered the supportability and consistency factors in evaluating a psychological expert's

prior administrative medical findings. 20 C.F.R. § 416.920c(b)(2); *Michael B.*, 2022 WL 4463901, at *2 (failure to articulate supportability analysis is a legal error that requires remand); *Bonnett v. Kijakazi*, 859 F. App'x 19, 20 (8th Cir. 2021) (per curiam) (failure to articulate consistency with the record is a legal error that requires remand). "The ALJ need not use the magic words of 'supportability' and 'consistency,' but it must be clear they were addressed." *Diane M. W.*, No. 20-cv-2651 (SRN/ECW), 2022 WL 4377731, at *5 (D. Sept. 22, 2022) (citing *Svendsen v. Kijakazi*, No. 1:21-cv-1029 (CBK), 2022 WL 2753163, at *8 (D.S.D. July 14, 2022); *Goss v. Kijakazi*, No. 4:21-cv-0663 (LPR/JJV), 2022 WL 1511521, at *3 (E.D. Ark. May 12, 2022)).

Here, the ALJ's conclusions on Drs. Mylan and Gilyot-Montgomery's prior administrative medical findings are confusing. The ALJ recounted that these findings concluded Plaintiff's "capacity to cope with co-workers and supervisors would be significantly restricted but adequate to handle brief, infrequent and superficial contact" and that her "ability to handle supervision would be restricted secondary to reduced stress tolerance but adequate to cope with reasonably supportive supervisory styles that could be expected to be found in many customary work settings." (Tr. at 24–25.) The ALJ determined that, "[w]hile these findings are not stated in vocationally relevant terms, they are generally persuasive because they are supported by explanation and consistent with evidence [in the record]." (Tr. at 25.) The ALJ separates out coworkers and supervisors in this analysis, and also discusses how Plaintiff's limitations related to stress specifically bear on her ability to interact with supervisors—not with coworkers generally. As such, one would reasonably expect an RFC which included limitations on Plaintiff's ability to

interact with supervisors. But while the RFC limits Plaintiff to "brief superficial interactions with coworkers and the general public," it is silent about any limitations concerning supervisory interactions. (Tr. at 22.)

The Court cannot discern whether the ALJ intended to include supervisors in the category of coworkers (as the Commissioner argues), or intentionally excluded supervisors from the social limitations in the RFC (despite finding the prior administrative medical findings that would support such a limitation persuasive), or just forgot to add supervisors to the RFC's social limitations. If the record evidence is consistent with particular social interaction limitations for coworkers and the public—as the ALJ concluded and included in the RFC—the ALJ has not explained how the record evidence is inconsistent with any limitations for supervisors. Likewise, if the record evidence supports particular social interaction limitations for coworkers and the public, the ALJ has not explained why such limitations are unsupported for supervisors.

Citing the Eighth Circuit's decision in *Wyatt v. Kijakazi*, 23-1559, 2023 WL 6629761 (8th Cir. Oct. 12, 2023), the Commissioner argues that so long as the Court finds substantial evidence in the record could be marshaled in support of the ALJ's social interaction limitations, the Court should affirm the ALJ's decision. Yet this is problematic because, while an ALJ's opinion must be read as a whole, *see Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009), an ALJ still has a mandated duty to give an explanation that stands on its own under 20 C.F.R. § 416.920c. *See also Bonnett*, 859 F. App'x at 20 (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943)) ("While the Commissioner argues that Dr. Thompson's opinion was not consistent with specific other evidence in the record, we will

not affirm on this basis, as the ALJ made no such findings."). In other words, even if there is substantial evidence in the record to support his conclusions, by regulation, the ALJ must still provide a sufficient explanation about how he came to those conclusions when the question is what credence to give prior administrative medical findings. The issue is not whether the record substantially supports the ALJ's decision; the issue is whether the ALJ legally erred by failing to follow his regulatory mandate under 20 C.F.R. § 416.920c because he did not provide an explanation that included the factors of supportability and consistency when excluding interaction limitations that he explained were persuasive but then did not incorporate into Plaintiff's RFC. The Court finds that the ALJ's failure to explain the apparent omission of limitations as to supervisor interactions is a legal error.

## III.    THE ERROR HERE IS NOT HARMLESS.

Finding error in the ALJ's explanation does not end the matter, however. "A plaintiff bears the burden of demonstrating that an agency's error is harmful." *Christopher J. B. v. Kijakazi*, No. 20-cv-2631 (JFD), 2022 WL 2806374, at *7 (D. Minn. July 18, 2022) (citing *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009); *Byes v. Astrue*, 687 F.3d 913, 917 (8th Cir. 2012)). This means that Plaintiff "must provide some indication that the ALJ would have decided differently if the error had not occurred." *Byes*, 687 F.3d at 917.

If Plaintiff has limitations as to her social interactions with supervisors, it is unclear whether the DOT jobs put forth by the vocational expert would remain available to Plaintiff. *See, e.g.*, *Lucus v. Saul*, 960 F.3d 1066, 1070 (8th Cir. 2020) (when a court cannot determine whether the ALJ would have reached the same conclusion absent legal error, the error cannot be treated as harmless). The ALJ's hypotheticals posed to the vocational

17

expert about possible work in the national economy only asked the expert to account for the limitations of a person who "can tolerate brief, superficial interactions with coworkers and the general public." (Tr. at 70.) The ALJ did not pose any questions to the vocational expert about limitations on workplace interactions with supervisors. Plaintiff's attorney did pose several questions related to Plaintiff's social interaction limitations. First, he asked the vocational expert about whether jobs would remain if a person similar to Plaintiff could not interact occasionally, briefly, and superficially with coworkers. (Tr. at 71–72.) Then he asked whether jobs would remain in the national economy if a person similar to Plaintiff could not interact briefly or superficially with a supervisor. (Tr. at 72–73.) As to the second question, the vocational expert answered that it would depend on whether the individual could "complete the work satisfactorily" because, "[i]f the individual is completing work satisfactorily, [then interactions with supervisors] might be only brief and superficial," noting it was still possible that the interactions in the identified occupations might still require greater interactions than brief and superficial. (*Id.*) The attorney then asked whether a person who could not handle any interactions with supervisors would be precluded from work, and the vocational expert said "yes, I agree with that." (Tr. at 73.) With an incomplete record on the effect of Plaintiff's social interaction limitations and their impact on her RFC, the Court cannot find the ALJ's error in discounting the psychological experts' prior administrative medical findings without sufficient explanation (and potentially misstating Plaintiff's RFC) harmless.

The Court thus recommends that this matter be remanded to the Commissioner, under sentence four of 42 U.S.C § 405(g), for the ALJ to complete the record. *See* 42 U.S.C

§ 405(g) ("The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.") On remand, the ALJ should: (1) explain why Plaintiff's RFC should (or should not) be further limited to brief and superficial workplace interactions with supervisors; and (2) recall a vocational expert for testimony if necessary to address new hypothetical questioning based on a modified RFC.

## RECOMMENDATION

Based on the above, as well as the files, records, and proceedings in this case, **IT IS RECOMMENDED** that:

1. Plaintiff's Motion (Doc. 11) be **GRANTED IN PART** and **DENIED IN PART**;

2. Defendant's Motion (Doc. 13) be **GRANTED IN PART** and **DENIED IN PART**; and

3. The matter be remanded to the ALJ for proceedings consistent with this Recommendation.

DATED:  July 15, 2024                            _s/Douglas L. Micko_
                                                 DOUGLAS L. MICKO
                                                 United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written

objections to a magistrate judge's proposed findings and recommendations within 14 days after being served with a copy" of the Report and Recommendation.

A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).